UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WAYNE T. B.

                          Plaintiff,

v.                                                    1:20-CV-1476
                                                      (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC         KENNETH HILLER, ESQ.
  Counsel for Plaintiff                     MELISSA KUBIAK. ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                 DANIELLA CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 16.)  The court has jurisdiction over this matter pursuant to

42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is granted to the

extent it seeks remand for further proceedings, and the Commissioner's motion is

denied.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1970.  (T. 89.)  He completed high school.  (T. 254.)
Generally, Plaintiff's alleged disability consists of "spots on lungs," "growth on chest,"
neuropathic idiopathic choroidal vascularization left eye, central serous retinopathy
("CSR") left eye, nuclear sclerosis, and arthritis.  (T. 90-91.)  His alleged disability onset
date is August 1, 2016.  (T. 89.)  His date last insured is December 31, 2020.  (*Id.*)

### B.      Procedural History

On March 13, 2017, Plaintiff applied for a period of Disability Insurance Benefits
("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the
Social Security Act.  (T. 89.)[1]  Plaintiff's applications were initially denied, after which he
timely requested a hearing before an Administrative Law Judge ("the ALJ").  On May 21,
2019 (T. 37-48) and again on November 25, 2019 (T. 49-87), Plaintiff appeared before
the ALJ, JuanCarlos Hunt.  On January 14, 2020, ALJ Hunt issued a written decision
finding Plaintiff not disabled under the Social Security Act.  (T. 13-36.)  On September 8,
2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the
ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff
timely sought judicial review in this Court.

### C.      The ALJ's Decision

---

[1]      Effective March 27, 2017, many of the regulations cited herein have been amended, as
have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security applications were
filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the
earlier regulations and SSRs.

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 16-31.)  First, the ALJ found Plaintiff met the insured status requirements through December 31, 2020, and Plaintiff had not engaged in substantial gainful activity since August 1, 2016.  (T. 18.)  Second, the ALJ found Plaintiff had the severe impairments of post-traumatic stress syndrome ("PTSD"), thoracic facet joint syndrome, and hepatitis C.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 19.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except:

> he frequently can balance, crouch, kneel, crawl, stoop, and climb ramps, stairs, ladders, and scaffolds; he frequently can push and/or pull, reach overhead, handle, finger, and feel bilaterally; he frequently can push and/or pull and operate foot controls with the lower extremities; he has limited visual acuity, depth perception, accommodation, and/or field of vision bilaterally but retains sufficient acuity to read small print and large print frequently, sufficient eye depth perception, visual acuity and field of vision to handle objects of all sizes and avoid ordinary hazards in the workplace, and sufficient accommodation to focus on objects; he needs to avoid jobs requiring performance at a production rate pace (e.g. assembly line work); he can have no exposure to hazards, e.g., unprotected heights, machines with moving mechanical parts, and driving employer vehicles; he can understand, remember, and carry out simple instructions; he frequently can interact with supervisors and occasionally with coworkers and the public; he can make simple work related decisions; he can tolerate few changes in a routine work setting; and, he will be off task 10% of the day due to, for example, alternating between sitting and standing, attention and/or concentration lapses, and fatigue.

(T. 21-22.)[2]  Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 29-30.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues "the ALJ failed to support the mental portion of the RFC determination with substantial evidence where he did not tether his findings to a medical opinion."  (Dkt. No. 12 at 12-15.)  Second, and lastly, Plaintiff argues the ALJ impermissibly cherry-picked the medical opinions using his own lay interpretation of examination findings.  (*Id.* at 15-19.)  Plaintiff also filed a reply in which he deemed no reply necessary.  (Dkt. No. 14.)

### B.    Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues the ALJ's mental RFC finding is supported by substantial evidence.  (Dkt. No. 13 at 5-20.)

## III.    RELEVANT LEGAL STANDARD

### B.    Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The "substantial

---

[2]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). In particular, it requires deference "to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). It is not the Court's "function to determine *de novo* whether a plaintiff is disabled." *Brault,* 683 F.3d. at 447. "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' " *Brault,* 683 F.3d at 448. The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [the reviewing Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks omitted).

### C.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

## IV.   ANALYSIS

In general, Plaintiff argues the ALJ erred in formulating Plaintiff's mental RFC

because the ALJ failed to properly assess the medical opinion evidence in the record

and the ALJ failed to support the mental RFC determination with substantial evidence in

the record.  (Dkt. No. 12.)  Defendant argues the ALJ properly weighed the opinion

evidence, and substantial evidence supported the mental RFC determination.  (Dkt. No.

13.)  Neither party disputes the ALJ's findings at steps one through three, nor do they

challenge the ALJ's physical RFC determination.  Therefore, for ease of analysis only

the relevant portions of the decision and record will be discussed.

For the reasons outlined below, the ALJ erred in his assessment of the medical

opinions and remand is necessary.  Plaintiff essentially argues the ALJ erred in

weighing the medical opinion evidence in the record.  (Dkt. No. 12 at 15-19.)  Plaintiff

argues the ALJ "cherry-picked" the opinions of treating source Alfred Belen, M.D. and

consultative examiner Ashley Dolan, Psy.D.  (*Id.*)  Plaintiff asserts the ALJ's error in

weighing opinion evidence was harmful, because "it is unclear how the ALJ determined that Plaintiff was capable of understanding, remembering, and carrying out simple instructions, making simple work-related decisions, frequently interacting with supervisors, and be on task for 90% of the workday, where these findings conflict with the medical opinion evidence."  (*Id.* at 14.)  Plaintiff proceeds to make the related argument that the ALJ failed to "connect the specific limitations included in the RFC finding with medical evidence."  (*Id.*)

As an initial matter, an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion.  The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a)(1). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021).  Indeed, the Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  Therefore, Plaintiff's broad assertion that the ALJ's RFC determination was the product of legal error because each specific limitation was not supported by a medical opinion is without merit.  Here, however, remand is necessary because the ALJ failed to properly weigh

opinion evidence and the ALJ failed to provide sufficient analysis to support the RFC determination.

Although the ALJ need not rely on a specific medical opinion to support the RFC determination, the ALJ must provide sufficient analysis to support his weighing of the medical opinion evidence in the record and his ultimate RFC determination.  Remand may be required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record," or where the ALJ's lack of analysis otherwise inhibits a meaningful review by the court.  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

First, the ALJ failed to properly weigh the medical opinion evidence in the record because the ALJ improperly relied on a selective reading of the record and substantial evidence in the record did not support his determination.  Under the regulations applicable to the ALJ's decision, when assessing medical opinion evidence from a treating source, the ALJ must consider, among other things, how consistent the opinion is with the other evidence of record.  *See Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) ("The governing regulations require an ALJ to explicitly consider certain nonexclusive factors when making this determination: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.") (summarizing 20 C.F.R. § 404.1527(c); citation omitted). However, the failure to explicitly apply these so-called "*Burgess* factors" may be harmless error if the ALJ otherwise provides good reasons when assigning weight to a treating source's opinion.  *See, Ferraro v. Saul*, 806 F. App'x 13, 14–15 (2d Cir. 2020)

("[T]he 'failure to explicitly apply the *Burgess* factors when assigning weight ... is a procedural error,' and unless the ALJ has 'otherwise provided good reasons for its weight assignment, we [will be] unable to conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth its reasons.' *Id.* 'If, however, a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm.' *Id.*") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

On October 24, 2019, Plaintiff's treating psychiatrist Dr. Belen completed a Medical Source Statement.  (T. 663-668.)  Dr. Belen indicated he treated Plaintiff for 20 minutes every two to three months for the past eight months.  (T. 663.)  Dr. Belen listed Plaintiff's diagnoses as major depressive disorder ("MDD"), generalized anxiety disorder ("GAD"), obstructive sleep apnea ("OSA"), and noted his current Global Assessment of Functioning ("GAF") score was 50.  (*Id.*)  Dr. Belen listed Plaintiff's current medications as Lamictal and Modafinil, and wrote Lamictal could cause sedation.  (*Id.*)  Dr. Belen opined Plaintiff's prognosis was guarded.  (*Id.*)

Dr. Belen opined Plaintiff's mental impairments caused him to be "unable to meet competitive standards" in the areas of: remembering work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods;

accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; and dealing with normal stress.  (T. 665.)

Dr. Belen opined Plaintiff's abilities to make simple work-related decisions, ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions were all "seriously limited."  (T. 665.)  Dr. Belen further opined Plaintiff was "unable to meet competitive standards" in the areas of: understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals or making plans independently of others; dealing with stress of semiskilled and skilled work; interacting appropriately with the general public; and traveling to unfamiliar places.  (T. 666.)  He opined Plaintiff's abilities to maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation were all "seriously limited."  (*Id.*)

Dr. Belen indicated his opinion was based on Plaintiff's diagnoses and his personal interactions with Plaintiff.  (T. 666.)  Dr. Belen opined Plaintiff's mental conditions exacerbated his experience of pain and noted that "studies show MDD [increases] subjective experience of pain."  (*Id.*)  He further opined Plaintiff would be absent from work more than four days per month due to his impairments or treatment, and that his impairments had lasted and were expected to last at least 12 months.  (T. 667.)  Dr. Belen noted Plaintiff's poor social skills would cause Plaintiff to have difficulty working at a regular job on a sustained basis.  (*Id.*)  Finally, Dr. Belen opined Plaintiff

would be unable to engage in full-time competitive employment on a sustained basis. (T. 668.)

The ALJ afforded Dr. Belen's opinion "little weight."  (T. 27.)  The ALJ reasoned, although the doctor was a treating source, the treatment history was "quite brief."  (*Id*.) The ALJ further reasoned the opinion was "inconsistent with [the doctor's] findings and observations of [Plaintiff] during examination."  (T. 28.)  The ALJ specifically cited an April 2019 office visit during which time Dr. Belen observed Plaintiff's affect as anxious and depression, "but otherwise his examination was normal."  (*Id*.)  The ALJ cited follow up visitations during which time Dr. Belen noted Plaintiff displayed anxiety, his affect was anxious and depressed, and one instance where he had a mildly impaired attention span, but he was normal otherwise.  (*Id*.)

Indeed, as outlined by the ALJ, Dr. Belen noted Plaintiff's orientation was intact, his memory was grossly intact, his attention span and concentration were normal, and his judgment and insight were grossly intact.  (T. 671, 674, 677, 680.)  However, the record also contains Dr. Belen's July 2019 observation that Plaintiff displayed perseverative thinking and paranoia (T. 677) and his August 2019 assessment that Plaintiff's mental impairments were "unstable" (T. 680).

Further, the ALJ concluded Dr. Belen's opined limitations were inconsistent with the record which showed "unremarkable mental status examination findings."  (T. 28.) In support of his conclusion, the ALJ cited a March 2017 notation in which Plaintiff affirmed "overwhelming stress, sleep disturbances and anxiety," however he denied depression (T. 396) and a February 2017 notation describing Plaintiff as having an appropriate mood and normal affect (T. 402).  The ALJ also cited notations from

Plaintiff's neurologist who treated Plaintiff for sleep apnea in support of his determination that Dr. Belen's opined limitations were inconsistent with the record. During treatment for sleep apnea, providers noted Plaintiff had a normal affect (T. 653) and was "well nourished" in "no apparent distress" and "speech clear with appropriate content" (T. 655, 657, 659).  The ALJ further cited notations from Plaintiff's cancer treatment providers to support his conclusion.  During follow-up treatment, providers noted Plaintiff was "alert and oriented to person, place and time, mood and affect appropriate," (T. 949, 985), demonstrated appropriate affect (T. 960), was "calm, alert and appropriate, in no acute distress" (T. 968).  Lastly, the ALJ concluded Dr. Belen's statement, that Plaintiff was unable to engage in full-time employment, was a determination reserved to the Commissioner and therefore given no weight.  (*Id.*)

In addition to Dr. Belen's opinion, the record contains a medical source statement from consultative examiner, Ashley Dolan, Psy.D.  (T. 539-544.)  Based on her examination of Plaintiff, Dr. Dolan opined Plaintiff could understand, remember and apply simple and complex directions.  (T. 542.)  Dr. Dolan opined Plaintiff had "marked limitations" in his ability to: use reason and judgment to make work-related decisions; regulate emotions; control behavior; and maintain his well-being.  (*Id.*)  She opined Plaintiff had "moderate limitations" in his ability to interact adequately with supervisors, coworkers, and the public.  (*Id.*)  She opined Plaintiff had "mild limitations" in his ability to: sustain an ordinary routine and regular attendance at work, and maintain personal hygiene and appropriate attire.  (*Id.*)

The ALJ afforded Dr. Dolan's opinion "some weight."  (T. 27.)  The ALJ reasoned "some of the limitations were excessive and not supported by the objective evidence in

the record as a whole." (*Id.*)  As with his analysis of Dr. Belen's opinion, the ALJ specifically noted the "unremarkable mental status examination findings" showed an anxious and fearful mood, but were otherwise normal.  (*Id.*)

Lastly, the record contains a statement from non-examining State agency medical consultant, A. Dipeolu, Ph.D.  Dr. Dipeolu opined Plaintiff had moderate limitation in interacting with others.  (T. 96.)  He opined Plaintiff had mild limitations in understanding, remembering, and applying information; concentrating, persisting, or maintaining pace; and, adapting and managing oneself.  (*Id.*)  Overall, Dr. Dipeolu stated Plaintiff's psychiatric impairments were "moderate," and he retained the ability to perform "routine, repetitive jobs requiring brief, superficial contact with others."  (T. 97.)  The ALJ afforded Dr. Dipeolu's opinion "little weight."  (T. 28.)  The ALJ concluded the record supported greater limitations.  (*Id.*)  The ALJ reasoned the doctor's findings were inconsistent with objective evidence including Dr. Dolan's mental status examination findings.  (*Id.*)

As outlined above, the ALJ concluded Dr. Belen's and Dr. Dolan's limitations were inconsistent with "unremarkable mental status examination findings."  (T. 27.)   To be sure, in assessing medical opinion evidence the ALJ must consider the amount of objective medical evidence supporting the opinion.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Here however, the ALJ improperly relied on isolated notations provided by sources who treated Plaintiff for physical, not mental, impairments to discount opinion evidence.  The purported inconsistencies cited by the ALJ do not withstand scrutiny.  *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 9 (2d Cir. 2020).

Although the ALJ did cite to normal findings, "[s]ome normal mental exams [. . .] still fail to constitute substantial evidence supporting a determination of a denial of disability where other evidence in the record was ignored." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, at *12 (D. Vt. 2021).  Therefore, occasional notations by sources who treated Plaintiff for non-mental health related conditions did not undermine the conclusions of a treating mental health source or psychiatric consultative source that Plaintiff was seriously limited in many areas of mental functioning.

Second, the ALJ erred in formulating Plaintiff's mental RFC determination because the ALJ failed to provide sufficient analysis connecting the evidence in the record to his determination and the Court cannot glean the ALJ's rationale from his decision.  To be sure, an ALJ's RFC finding need not incorporate every limitation contained in a medical opinion to which the ALJ gave weight.  *See Phoebe B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01570, 2022 WL 4462228, at *7 (W.D.N.Y. Sept. 26, 2022) (collecting cases).  However, an ALJ should explain why he did not include limitations in the RFC finding.  *Linda H. v. Comm'r of Soc. Sec.*, No. 19-CV-1244-LJV, 2021 WL 2075437, at *3 (W.D.N.Y. May 24, 2021).

Here, all medical sources provided greater mental health limitations than those assessed by the ALJ and the ALJ failed to provide sufficient analysis to support his findings of lesser restrictions.  For example, the ALJ concluded Plaintiff could frequently interact with supervisors and occasionally interact with coworkers and the public.  (T. 22.)  However, Drs. Belen, Dolan and Dipeolu opined Plaintiff had greater social limitations than reflected in the RFC.  Dr. Belen opined Plaintiff was "unable to meet competitive standards" in the area of interacting appropriately with the general public

and he was "seriously limited" in his ability to maintain socially appropriate behavior.  (T. 666.)  Dr. Dolan opined Plaintiff had "marked limitations" in his ability to regulate emotions and control behavior, and moderate limitations in his ability to interact adequately with supervisors, coworkers, and the public.  (T. 542.)  Dr. Dipeolu opined Plaintiff could have "brief, superficial contact with others."  (T. 97.)  Although the ALJ properly summarized treatment notations and other evidence in the record, the ALJ's written decision fails to provide any analysis to support the ALJ's social limitations.

Overall, remand is required for proper analysis of opinion evidence and subsequent mental RFC finding.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:      November 15, 2022

William B. Mitchell Carter
U.S. Magistrate Judge